May it please the Court, my name is Corey Evans. I represent activists who are plaintiffs in a lawsuit against Sea World for depriving them of their constitutional rights of free speech. The case presents a question of state action because the lower court found that Sea World was a private actor and not subject to suit under Section 1983. As this Court has repeatedly held, private parties can be treated as state actors based on a fact-intensive inquiry that weighs the facts on a case-by-case basis, no one fact being determinative either direction. To assist the Court in determining state action of a private party, there have been avenues cut into the law where there are clear analysis lines, and these lines have been called tests, such as public function test, joint action, or symbiotic relationship test, or compulsion test. And today, Your Honors, I will speak to you about two tests which I believe demonstrate that Sea World is a state actor in this case. Those tests are public function and joint action, also known as symbiotic relationship. To understand plaintiff's argument, the Court must look at the property in question. What we're talking about is a public park. We're not talking about land that the city owns in some business area that it rents to a private business, and that business has a warehouse and conducts its business. We're talking about a designated public park, Mission Bay Park. Now, let me ask you, now, the protesters or the activists, they haven't been told they couldn't protest on the parts of Mission Bay that are actually the public part, have they? When you say public, Your Honor, I'm distinguishing the Mission Bay Park. I assume you're familiar with Mission Bay. I'm distinguishing the Mission Bay Park and that Mission Bay area where there's open spaces run by the city from the theme park itself. And I understand your argument. You don't want to distinguish it. No, I will distinguish it, Your Honor. I will agree that the land, we're only talking about the land that Sea World is leasing. My clients have not been prevented from and have not, as far as I know, attempted to protest on other parts of Mission Bay Park, and so that's not an issue. The main reason that's not an issue is because the only reason they're protesting where they're protesting is because they're protesting the treatment of animals at Sea World, and so it makes no sense to be in the camping area. I'm just wondering whether or not they could protest on the public streets that lead up to the parking area for Sea World before, you know, outside of where you get in to pay. I watched some of the video before you go in to pay. And that's what we'd like to. We'd like to protest outside of where you go to pay, and we're not being allowed to protest outside of where you go to pay. You're doing it in the parking lot where you have to pay to get into the parking lot. You do not have to pay to get to the location where my clients were. You can park your car and pay to park and then walk up to the gates. Or there's a pedestrian pathway that goes all around Mission Bay Park, and it crosses the exact location where my clients were in this case, and that pathway, you don't have to pay to access where my clients were. You could be walking from anywhere in Mission Bay Park and reach that location without passing one ticket booth, without paying one penny to anyone, and without being stopped by anyone for any kind of permission slip to do this. It is part of it, lease to Sea World, and part of it not. Part of that walkway. The entire piece of property is part of the lease to Sea World, and the lease materials show that pedestrian pathway, part of the master plan for the area, show that pedestrian pathway as remaining there. Part of Mission Bay Park's goal is to have intertwining pedestrian pathways that people can walk around the entire park. But they've leased that part of the pathway to Sea World? They haven't specifically said, we're leasing you the pathway. What they've done is they've drawn out a piece of property on a map and said, okay, you're leasing this land, you have to keep it open for the public interest, and you have to keep the land open during the regular scheduled hours. If you ever want to close it, you have to get our permission. The content of the park has to have 75% animal-related themes, specifically laying out what the content of the park has to have in it. I'm not really answering my question. My question is, there's a part of Mission Bay Park that's leased to Sea World, and that can keep you up and enforce their speech policy because they're leasing it privately, and it's for the designated purpose of Sea World. Aren't there not public streets and public pathways around there on which you could also protest? Yes, Your Honor. Here's the problem. I'll be honest with you. I've been there. Here's the problem. I want you to admit. I just want to get an understanding of what, okay, tell me how. That has actually occurred. People have stood on, because they've been in the past, by the police and by Sea World, forced out of what I call the apron area, the area right in front of the ticket booths. They've been forced out to that street. The problem is, they're not allowed to approach the cars coming in to hand them anything or to talk to them because of police regulations regarding traffic. They're forced just to hold banners. Well, 90% of the people who go to Sea World drive in that location. You're forced to have a message on a banner, and you cannot talk to the people coming in. Maybe you should be suing the city for not letting you have an adequate alternative of protesting on public lands. Well, we're suing both, Your Honor. There's a new lawsuit that started in the lower court because, again, my clients went back to Sea World and tried to protest, and then the police came out, got in their face, and said, we're going to take you to jail as an agent of Sea World, as a representative, as their intermediary. I'm going to tell you now, you have to leave, or I'm going to arrest you, and you'll be in jail for three days. At that point, they were on Sea World leased property, right? They were. There's no case law that says that simply because a private company leases public park land that they have the rights to exclude people as if the land were privately owned. In fact, the case law is the opposite. It says, regardless of the nature of the land, whether you want to transform public park land and call it private, it doesn't, therefore, lose its character as public park land, and to exercise their constitutional rights. If I may, Your Honor, one moment. Can I ask, are you aware of any case that's ever held that a private-themed park, such as Disneyland or Sea World, is a public actor? I feel like your question's impossible for me to answer because it's compound, because Sea World is not like Disneyland. Specifically, in the city master plan document, it says, we do not want a Disneyland. In Sea World's master plan, it says, we're not allowed to be like a Disneyland. Disneyland is privately owned property, and it's not, the content of Disneyland is not controlled by Anaheim. The content of Sea World is controlled by the city of San Diego, in that it requires Sea World to have certain rides, certain attractions, certain things it offers to the public, and it mandates that Sea World stay open. It mandates the visual appearance of all the signs in Sea World. It also mandates that it reviews all institutional advertising that Sea World wants to do on the property. It also manages all the development that Sea World does on the property by a master plan that says, if you ever want to develop the Sea World property in a certain way, you have to pass it by our design center, because we want Mission Bay to have a certain theme. In the master plan documents, which I've submitted in this case, they show that the city considers the whole Mission Bay Park to be a park within a park. What's more striking, and the reason this is nothing like Disneyland, is because the under terms that said, the state of California said, you have to keep this open for the public interest. Then, city of San Diego met with the federal government, and before Sea World got involved, and said, can you dredge this area for us? And the federal government said, we'll do it, but you have to keep the land open for the public benefit. And they said, sure. They passed a resolution saying, we'll keep Mission Bay open for the public benefit. Then, city of San Diego went around and did a slew of eminent domain cases on the people living in that area, took their property to make it part of Mission Bay Park. They, city of San Diego, had decided before Sea World came along that they wanted to have an aquatic theme park. And they said, we want to diversify our economy by having tourists come to Mission Bay, and therefore we want an aquatic theme park, but we don't want it to be like Disneyland. So then they leased the land in the 1960s to Sea World to basically run this aquatic theme park, wherein their rent is paid by a percentage of the revenue that Sea World brings in. So which theory of state action are you pressing? Two, Your Honor. Public function and joint action. And the public function argument is really clear. The law is that when you have a public park, and then you have a person who comes on the street and gives a free speech on that public park, it becomes a public function. And there's been multiple cases that have said, if you have a private actor on public land, and that private actor is trying to enact regulations and or enforce regulations about free speech, then that private actor is performing a public function. Now, how do you get around our Gilroy Garlic Festival case? Oh, Your Honor, that case is so inapposite in the sense that that case dealt with a permit. That case was a permit for a three-day festival. So Gilroy gives GGFA a permit for a three-day festival, and they don't have GGFA policing the area. They're out there policing it themselves. So they don't pass the public function of policing the land to the GGFA. In this case, it's a 50-year lease. Every case cited in all the briefs where a public government agency has leased land to a private company, it's been state action. Every case in the Ninth Circuit cited in the briefs. The Villegas case is also further, further differentiated. I agree with the Villegas case. I was in the dissent. I happen to know that, Your Honor. Right. It does seem to be the biggest obstacle you have to overcome on the public function. It would seem that way until you looked at the fact that, as I said, even the majority said this is a case where the city police are performing their own police function by going around in the park and still monitoring the land, just like the police are supposed to do. The majority noted that. In this case, the police have basically left the security and the enforcement and the regulation of this public park land to a private company. Just like in the Faneuil Hall case, Your Honor, that case said that when you have an area that's open for the public benefit and then you have a private company who comes in and enacts speech regulations on land that's open for the public benefit, they perform a public function. This case is even more dramatic because the Mission Bay Park regulations specifically state that only park and rec employees can supervise and issue regulatory and regulate the area. I'm sorry, Your Honor. I failed to reserve time. Can I reserve the remaining minute? Yes, certainly. Okay. You might even get an extra minute. May it please the Court, good morning, Your Honors, William Cole for the athletes. If I could start just by going to a question that Your Honor asked, the facts in the case and on the record establish that people have, including Ms. Cartmell, the head of the group that was protesting here, have in fact protested outside of the parking lot gates on numerous occasions, and that's in the record in the Marcellino Declaration. But going right to the point, we do believe that this case is on all fours is probably the wrong term with Viegas versus the Gilray Garlic Association, and I say not on all fours but because there is less interrelationship between the state and SeaWorld than there was in the garlic festival case. I'm not familiar with the location there, but tell me, were these people trying to be on this public path which is within the SeaWorld area? Well, there is no public path, and we disagree and don't believe the evidence supports what Then you could exclude people from that path? Yes. The path that he's referring to, and it's also referred to in the briefs, including before the district court, is a path that permits people who have not driven to SeaWorld to access the park. But only they would have to be coming to go into the park? That's correct. SeaWorld has, and the evidence, again, is specifically in the record, SeaWorld has precluded anyone from using that path which is within its leasehold for any purpose other than to And that's why this case is so different than Faneuil Hall, where there are two public streets were then leased, but with an express easement that they must be kept open to the public for general access, for use unrelated to Faneuil Hall itself, such as crossing and getting to the harbor. So it's a very different situation here where a portion of what is Mission Bay Park has been leased for commercial purposes, and it's very express, and it's in the master plan that there will be such commercial leases to SeaWorld, as well as other portions to hotels. Now, this parking lot is exclusively for SeaWorld? It's exclusively, well, it's primarily for SeaWorld. SeaWorld has agreed, per the lease, to permit the city to use it for specific functions outside of the normal business hours of SeaWorld when the city needs it there. I can't remember exactly what the facility is, but there is a reason. But then again, even then, only for purposes of parking and going to the public function. So otherwise, and aside from that, yes. SeaWorld and there is one tenant at SeaWorld, which also is entitled to use the parking lot again only for that purpose, and it's not generally open to the public. So none of this land is generally open to the public. And moreover, in this case, I'm going to Gorentz versus Salt River, another Ninth Circuit case. The evidence in this case is undisputed that the city played no role in the creation of the trespassing policy issue. It was only SeaWorld that created it. And on the back of this case, the police were not called. The police did not come. The private security officers asked the people to leave, and after being asked several times, the people did leave. So even when one looks at the dissent in the Gilroy case, we do not have a situation of analyzing, you know, what role the police did play in this particular situation, whether that somehow might cross the line in this extensive discussion, as you know, of woman care and how that all plays out. None of those issues are before the court in this case because, again, it is undisputed. The police were not requested to come and do anything with the trespassers and did not come, did not do anything. How close is it possible for pickets to get to where they can directly appeal to people? They can and have picketed or hand-billed or bannered directly outside the parking lot. So as you're entering the Seaworld parking lot, there is a sidewalk area there, and that's where, for 20 years, Ms. Cartmill and her organization has, in fact, protested. But they can only kill banners there. Excuse me? Well, I don't believe that the evidence and record establishes that at all. That was counsel's statement. There have been a variety of protests of different types, as established in the Marcelino Declaration that was before the lower court, establishing that people have protested, not simply banners. Well, this area where they're confined to, other people don't come there so that they can talk with them. Is that right? I'm not sure what you mean. Every automobile that comes into the park has to stop at that gate to pay its parking fee and go in. So I think that's... I would say that there are people, and the people that they say they're trying to reach. I would also... Are they allowed to go up and talk to those people in the cars? Well, we don't stop them. Even if the police stop them, that would be the police's business. Whoever stops them, I would answer the question whether there is an opportunity to present your case to the people entering the park. Well, let me suggest, Mr. Your Honor, that that question is a question as to whether or not SeaWorld is a public forum, I think, as opposed to whether or not there was state action involved in this proceeding. No, it's a factual question I asked. It's not a legal... I didn't ask you whether it was a public forum or not. I asked where there was an opportunity. And my answer is yes, there's an opportunity. Not only is yes, there is an opportunity, but that the record, again, I'm referring to the Marcellino Declaration, establishes that, in fact, people have protested during the protest. Protested. Protested. You mean that... They've done... Does it say in the declaration that they can go up and talk to people? I don't believe it does say one way or the other the manner in which they protested. Well, your opponent suggests that nobody's allowed to stop them there just simply because of traffic flow. They don't want to... My opponent says that, but, again, that's not the evidence. I mean, one of the problems we have in this case is, you know, this is not a case decided on a motion to dismiss, but on a motion for summary judgment. And, you know, the evidence, it was fully... It was discovery, and then there was evidence presented. And, subsequently, in this court, a number of things have been stated as being facts that were never even litigated below. I do not believe that my opponent is correct in his statement. Is there a... Do I understand your opponent to say that there's another case now going on in the district court? Yes. Not the same plaintiffs, but overlapping plaintiffs have sued the city of San Diego, Seaworld, and several police officers, rising out with a completely different incident that actually occurred after the decision in this case had been issued, and I believe even after the notice of appeal had been filed in this court. Frankly, I mean... And then after that, appellants attempted to have this case remanded, and this court rejected that motion. They wanted them to be consolidated. But that case involves very different facts, all of which need to be litigated in terms of what the role of the police were in that situation, which is nothing like the situation. Unless the court has another question. I just wanted to raise with you, the district court excluded evidence from the city's website, the San Diego Park and Recreation Department website. It seems to me that would be wrong, given the self-authenticating nature of the city's own website. Well, I think the problem that the district court recognized was that there was no... Well, self-authenticating in terms of underlying material for the statements therein, there's no... The only thing that the appellants attempted to put into evidence was a site for the website, and we believe they had to at least establish that this was, in fact, the city's website. Doesn't the Gov domain name show that it was? Well, personally, I would not rely on anything on the internet just because it says it's Gov. Did you say San Diego Parks and Recreation Facility? Again, anyone can put up a website, and anyone can call the website what they want until they shut down. And I think that was what was concerning to the court. However, I would also state, as we did in our briefs, that whether that document is considered or isn't considered should not at all change the result. Yeah, I can see that you could have argued relevance, but not that it wasn't inherently believable. I mean, the city could say it is or it is not. Right, and we did argue it in relevance as well. Thank you. Thank you. Judge Reinhart, I'd like to address your question immediately. In the district court, I conduct depositions with not Mr. Cole, but an associate of his, where my client was asked specifically, can you go up to cars and hand in leaflets? Had you tried that? And she said yes, but the police came and stopped us because we're not allowed to walk out in the street and disrupt people while they're in their cars. So 90% of the people going to SeaWorld drive into the parking lot, although you can freely walk, because there's a pedestrian pathway that walks around the whole park. So all of these cars that go in, SeaWorld's able to prevent my clients from handing them a leaflet or speaking to them. Instead, you have to have short bumper sticker style messages on huge banners, which by its nature makes your messaging impossible to convey because it has to be five words or less. Please. Yes, Your Honor. Do you agree that that pathway can be restricted to only SeaWorld customers? No, Your Honor. There's nothing in the lease that says that. In fact, the lease says that they have to hold the property open to the public during a set schedule, and they can't deviate from that schedule without getting permission from the city, and it has to be for the public interest. Well, how does that affect the fact that this is property that they have leased under a lease, including this pathway? So, Your Honor, if you have a... Here's how I see it. The city owns the park, and the city owns all the pathways. They decide to lease a portion of it to an entertainment company that says, okay, in a fenced area, people are going to have to buy a ticket. I'm sorry, the city says, okay, well, you have to keep your property open to the public. Where does it give them permission to otherwise change the general rule that people have the right to walk on pedestrian pathways in city parks? Nowhere in the lease does it say you can restrict the public from walking on those already designated pedestrian pathways that exist right now. In fact, all the Mission Bay planning documents say that our whole point is to have a continuous system of pathways so that people can go around the whole park. I just want Your Honors to note that Mr. Cole is just blatantly wrong that there's no pathways. It specifically says in the documents, it specifically points out pre-existing pedestrian pathways and bikeways on the land that SeaWorld leases before they even leased it. And I note that on my reply brief on page 11, I go through all of them. One of them says, the existing pathway through the SeaWorld site provides pedestrian access on a combination of sidewalks and paved parking lots. The route enters the SeaWorld main entrance from SeaWorld Drive, proceeds north through the parking lot, turns west-northwest between the theme park and parking lot, turns onto Perez Cove Way and exits at the intersection of Perez Cove Way and Ingram. And then I go on to talk about bike paths. It's just, it's contradicted by the record. He cites the old evidence. Are your clients picketing only on the pathway? Yes, they were right on the pedestrian pathway. There's actually a map in the planning documents of the SeaWorld lease, and then there's a line that said, here's the pedestrian pathway.  And the pathway runs through the parking lot? Yes, it does, Your Honor. The pathway runs exactly through the parking lot, right in front of the ticket booth where my clients were standing. I also wanted to point out, Your Honor, since Villegas seems to be such an important case for this Court to consider, in Villegas, they were inside the part where you had to give a ticket to be. And in this case, they were outside that part. We weren't in that part. Thank you. Thank you, Your Honor. The case, it's argued, will be submitted.
judges: Fletcher B. , Reinhardt, Wardlaw